JAMES REAVIS
Netzer, Krautter & Brown, P.C.
301 N. 27th St. #100
Billings, MT  59101
Phone: (406) 433-5511
E-mail: james@nkbattorneys.com

Attorney for Defendant

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## BILLINGS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | **Case No. 25-CR-62-BLG-SPW** |
| Plaintiff, | |
| v. | **BRIEF IN SUPPORT OF MOTION TO SUPPRESS** |
| NATHAN WILNAU, | |
| Defendant. | |

## Issue Presented

Does a search warrant issued by a Montana district judge for real-time GPS cellular data violate the Stored Communications Act when the basis for probable cause is a tip—from a confidential informant facing prosecution—that "Nate" will be transporting drugs and is only corroborated on the grounds that Christina Hill and Nathan Wilnau were once involved in a drug-related traffic stop?

1

## Background

On June 15, 2023, Agent Michael Bennett met with a confidential source of information (SOI) in Billings, Montana. (USAO 264.)  On that day the SOI was being investigated for the crime of possessing dangerous drugs with the intent to distribute. (USAO 264.) Specifically, the SOI had been caught with psilocybin mushrooms and 80-90 grams of meth. (USAO 265.) The SOI was on probation with the State of Montana and had also admitted to using and distributing methamphetamine. (USAO 264.) The SOI did not have a history of providing reliable information about criminal activity to officers to aid in other investigations. (*See* USAO 264-265.)

Agent Bennett interrogated the SOI about unnamed drug users and distributors in the Billings area. (USAO 264.) Bennett found the information about these unnamed people to be credible, corroborated, and reliable. (USAO 264.) As Agent Bennett continued questioning the SOI, the SOI said that a woman named Christina Hill, who was originally from San Francisco but now lived in Billings, and a man they knew as "Nate" were involved in a partnership distributing meth in Billings. (USAO 264-265.) The SOI said Hill was the boss and Nate was

a lieutenant in her organization. (USAO 264.) They also said Hill and Nate lived in a residence together. (USAO 265.)

Without explaining how they knew, the SOI said $35,000 had been sent to San Francisco, California earlier that morning via UPS and that once the money arrived a package with fifty pounds of methamphetamine inside would be sent to Cody, Wyoming. (USAO 264-265.) The SOI said Nate would travel to Cody and return to Billings with the package in a red Dodge Durango. (USAO 265.)

The SOI then provided Bennett with the phone number 406-861-**** for Christina Hill and the phone number 406-200-**** for a "Nate." (USAO 265.) The 861 phone number had a text message exchange between SOI and Hill where "fungus" was discussed, which is a slang term for drugs. (USAO 265.) There was no like text message exchange between the SOI and "Nate." (*See* USAO 265.) Bennett matched the 861 number to Hill's public Facebook page. (USAO 265.) Bennett ran an open-source search on the 200 number and only learned it was a Verizon Wireless number. (USAO 265.)

Agent Bennett drove by the residence the SOI described. (USAO 265.) Bennett saw a female he identified as Hill who was standing in

front of a parked red Dodge Durango with Wyoming plates. (USAO 265.) Bennett did not obtain the plate number because Hill was standing next to the vehicle. (USAO 265.) Bennett did not observe a male outside or inside the residence, or any other car or evidence that suggested another person lived with Hill. (*See* USAO 265.)

Bennett ran a search of law enforcement records. At an unlisted date in the past, Bennett stated Christina Hill and a Nathan Wilnau were stopped in a car together where police seized methamphetamine.[1] (USAO 265.)

On June 16, 2023, Agent Bennett applied for a search warrant to track the GPS data of the 200 number. (USAO 263.) Bennett sought historical information about the phone's location since May 1 in the form of call detail records to include tower location data, available GPS, and precision location data. (USAO 264.) Bennett requested real-time location pings for a period of 30 days from Verizon Wireless. (USAO 264.)

---

[1] The contents of that traffic stop were not produced in the search warrant application and should not be part of the court's legal analysis. The discovery in this case does have a police report with additional details, but Wilnau has not attached that report to this motion because it is outside information that was not viewed by Montana district judge Davies.

In describing the 200 number to be tracked, Bennett inserted "WILNAU" throughout the search warrant application to describe the "Nate" provided by the SOI. Agent Bennett wrote, in the passive voice, "a male known to the SOI as Nate, identified as Nathan WILNAU . . ." (USAO 264.) Bennett wrote that Wilnau had a criminal history for possessing dangerous drugs, but did not list an offense more recent than 2002. (USAO 265.) Hill's criminal history was more extensive, describing multiple offenses ranging from 1998 to 2015. (USAO 265.)

Agent Bennett signed his search warrant application on June 16, 2023 at 1:10 p.m. and presented it to Montana state district judge Colette B. Davies, who signed it four minutes later. (USAO 267-268, 271.) Verizon Wireless provided "Real time GPS coordinate data in 15-minute increments between 06/16/2023 and 6/22/2023 for Verizon cell phone number 406-200-****." (USAO 272.)

Utilizing the GPS data, Agent Bennett tracked the phone with the 200 number and learned it had traveled to Wyoming and was returning to Billings. Bennett contacted Trooper Erick Fetterhoff and told him to stop a vehicle before it reached Billings. (USAO 49.) The trooper pulled over a grey Chevy Malibu Sedan. (USAO 48-49, 287.) Danielle Isabel

was the driver while Nathan Wilnau was the passenger. (USAO 48-50.)

Wilnau admitted there was enough meth in the car to get him into

trouble. (USAO 50.) A search of the vehicle recovered approximately

10.5 pounds of methamphetamine. (USAO 287.) Agents told Fetterhoff

to release Isabel and Wilnau from custody. (USAO 50-51.)

## Summary of the Argument

Under the Stored Communications Act, 18 U.S.C. § 2703, requests

for electronic communications and records issued by state district

judges must be issued by warrants under the law of that state that

demonstrate probable cause that the tracked phone number in question

is engaging in criminal activity. By Montana law, with its constitutional

right to privacy and heightened standard for search and seizure, tips

consisting of hearsay information provided by confidential informants

require independent corroboration to establish probable cause. Agent

Bennett did not have independent corroboration that the "Nate" 200

number provided by the SOI was being used as a tool for criminal

activity except for a past traffic stop that associated Wilnau with Hill.

Other than this association, Bennett's search warrant application did

not tie Wilnau to Hill's residence, the vehicle described by the SOI, the

200 number, or an inference that Wilnau acted as a lieutenant to a drug-dealing operation except by the SOI's word. The search warrant application does not support a finding of probable cause, and accordingly the warrant and all evidence resulting from it must be suppressed.

## Argument

The Fourth Amendment of the U.S. Constitution protects against unreasonable searches and seizures. *Katz v. U.S.*, 389 U.S. 347, 357, 88 S.Ct. 507, 514 (1967). "[T]he Constitution requires that the deliberate, impartial judgment of a judicial officer be interposed between the citizen and the police." *Id*. Courts must "conscientiously review the sufficiency of affidavits on which warrants are issued" to ensure that search warrants are supported by sufficient information to determine probable cause and not the bare conclusions of police officers "engaged in the often competitive enterprise of ferreting out crime." *Illinois v. Gates*, 462 U.S. 213, 239-240, 103 S.Ct. 2317, 2332-2333, (1983). A search warrant affidavit must provide the issuing magistrate a substantial basis for determining probable cause that a crime has occurred or is underway. *See Id*. The ultimate touchstone of the Fourth

Amendment is "reasonableness." *Brigham City v. Stuart*, 547 U.S. 398, 403, 126 S.Ct. 1943, 1947 (2006).

Evidence seized as a result of an unreasonable seizure or search is suppressed or omitted from evidentiary consideration under the exclusionary rule. *Segura v. U.S.*, 468 U.S. 796, 804, 104 S.Ct. 3380, 3385 (1984). Further, any subsequent searches and recovered evidence that flow from the initial constitutional violation are also suppressed under the "fruit of the poisonous tree" doctrine. *Wong Sun v. U.S.*, 371 U.S. 471, 484, 83 S.Ct. 407, 415-416 (1963). "[A] search is not made legal by what it turns up." *U.S. v. Di Re*, 332 U.S. 581, 595, 68 S.Ct. 222, 229 (1948).

Under the federal Stored Communications Act, warrants for electronic communication records issued by state courts must adhere to the warrant procedures of that State, in this case the law of the State of Montana. *See* 18 U.S.C. § 2703. Under Montana law, Agent Bennett's application for a search warrant to track the real-time GPS data of a phone number purportedly belonging to a "Nate" based on the uncorroborated tip of a confidential, criminally-investigated informant

did not meet probable cause standards under Montana law. This failure

also violated federal law and requires suppression.

## A. The SCA requires application of Montana state law and its probable cause standard when reviewing the reasonableness of search warrants that compel cellular service providers to disclose GPS tracking data of its customers.

In light of technological changes with how people communicate,

Congress has adopted and amended the Stored Communications Act

("SCA"), 18 U.S.C. §§ 2701-2713, over the decades to strike a balance

between allowing government access to electronic communication

providers for law enforcement purposes while protecting customers

from unwarranted intrusion. *In re U.S. for an Order*, 620 F.3d 304, 306

(3rd Cir. 2010). Given the vast amount of information stored by these

providers, Congress sought a higher standard for law enforcement to

access these electronic records to guard against "fishing expeditions"

while still making them appropriately available for ongoing criminal

investigations. *Id. at* 314.

Real-time GPS data constitutes either an "electronic

communication" ("any transfer of signs, signals, writing, images,

sounds, data, or intelligence of any nature," 18 U.S.C. § 2510(12)) or a

"record" stored by an electronic communications service, *see* 18 U.S.C.

§§ 2510(15), 2703(c)(1). When a governmental entity utilizes the state court process to obtain information that falls under the SCA, they must do so "using State warrant procedures." 18 U.S.C. §§ 2703(a), 2703(b)(1)(A), 2703 (c)(1)(A). Requirements for a court order issued by a state are detailed in 18 U.S.C. § 2703(d). The statute provides, "In the case of a State governmental authority, such a court order shall not issue if prohibited by the law of such State." 18 U.S.C. § 2703(d).

Agent Michael Bennett sought real-time GPS data from Verizon Wireless, an electronic communications provider. Bennett's search request fell under the Congressional protections of the SCA. Further, Bennett utilized the Montana state courts to sign off on his search warrant request. Therefore, the legality of that search warrant must be analyzed under Montana law as provided by federal statute.

**B. Montana state law includes a right to privacy and a heightened probable cause standard in its jurisprudence that is higher than the federal constitutional floor.**

The Montana Constitution's declaration of rights contains the right to due process, the right to be protected from unreasonable searches and seizures, and that no warrant shall be issued without probable cause. Mont. Const. art. II, §§ 11, 17. Unique to Montana, the

state constitution also contains an explicit right to privacy, which says,

"The right of individual privacy is essential to the well-being of a free

society and shall not be infringed without the showing of a compelling

state interest." Mont. Const. art. II, § 10.

The Montana Supreme Court has long interpreted the privacy

clause as imposing a higher standard when making probable cause

determinations. Montana has long prided itself in not feeling compelled

to "march lock-step" with federal precedent in the search and seizure

space. *See Montana v. Hardaway*, 2001 MT 252, ¶¶ 31-35, 307 Mont.

139, 36 P.3d 900. "Montana's unique constitutional language affords

citizens a greater right of privacy, and therefore, broader protection

than the Fourth Amendment in cases involving searches of, or seizures

from, private property." *Hardaway*, ¶ 31. Montana's adherence to its

citizen's privacy is one of the most stringent protections in the country.

*Montana v. Burns*, 253 Mont. 37, 40, 830 P.2d 1318, 1320 (1992).

For a search warrant to be presumptively reasonable, the warrant

must be supported by probable cause of illegal activity. *Montana v.

Staker*, 2021 MT 151, ¶ 13, 404 Mont. 307, 489 P.3d 489. "The right to

privacy is the cornerstone of protections against unreasonable searches

and seizures." *Montana v. Solis*, 214 Mont. 310, 319, 693 P.2d 518, 522 (1984).

The right to privacy under the Montana Constitution has been held to apply to the private electronic communications of its citizens. *Staker*, ¶ 15. The clause encompasses both autonomy privacy and informational privacy. *Montana v. Nelson*, 283 Mont. 231, 242, 941 P.2d 441, 448 (1997). The right to privacy was adopted in part because of concern the delegates had that Montanans should be protected against "eavesdropping, electronic surveillance, and such type of activities." *Staker*, ¶ 23. Montanans have a reasonable expectation of privacy that government agents are not surreptitiously monitoring their activities in private settings by electronic means. *Staker*, ¶ 23. "We have recognized a reasonable expectation of privacy in cell phone communications." *Montana v. Mefford*, 2022 MT 185, ¶ 15, 410 Mont. 146, 517 P.3d 210.

**C. Under Montana state law, Officer Bennett's search warrant application is not supported by probable cause because there was insufficient information to independently corroborate the tip of a confidential informant motivated by a desire to avoid further criminal prosecution.**

The determination of probable cause must "be limited to an assessment of information within the four corners of the search warrant

application." *Montana v. Kasparek*, 2016 MT 163, ¶ 12, 384 Mont. 56, 375 P.3d 372. A judge's assessment of the existence of probable cause is based solely on the statements and facts included in the search warrant application. *Kasparek*, ¶ 12. Considering outside information not included in the search warrant application—with the exception of false or misleading statements—undermines the constitutional safeguards against unreasonable searches and the reliability of the search process. *Kasparek*, ¶¶ 12-13. Retroactive consideration of omitted information from a search warrant application is not permissible under Montana law. *Kasparek*, ¶ 12.

Reviewing courts must ensure that the issuing judicial officer of the search warrant had a substantial basis to determine probable cause existed. *Montana v. Barnaby*, 2006 MT 203, ¶ 30, 333 Mont. 220, 142 P.3d 809. Similar to the federal analysis, courts are to consider the existence of probable cause in a search warrant application under the totality of the circumstances and "make a practical, common sense determination, given all the evidence contained in the application . . . whether a fair probability exists that contraband or evidence of a crime will be found in a particular place." *Barnaby*, ¶ 29.

Additional caution, however, is required when information originates from sources of questionable reliability. *Barnaby*, ¶ 42. Information originating from anonymous sources or hearsay (not personal observation) require independent corroboration. *Montana v. Reesman*, 2000 MT 243, ¶¶ 27-30, 301 Mont. 408, 10 P.3d 83, *as modified by Barnaby,* ¶¶ 41-42, 45. If an informant is identified in a search warrant application as a confidential informant, he or she must have provided reliable and accurate information on other occasions sufficient to establish reliability of the present tip. *Reesman*, ¶ 32. Without that reliability, further corroboration is needed. *Reesman*, ¶ 32.

There are some exceptions to bypassing the need for independent corroboration when acting on an informant's tip. A named informant who makes an unequivocal admission against interest of the criminal conduct to be investigated does not require further corroboration. *See Montana v. Tucker*, 2008 MT 273, ¶ 24, 345 Mont. 237, 190 P.3d 1080. Named informants motivated by good citizenship may be deemed reliable as well if the provided information demonstrates knowledge of a sufficient degree given the nature of the circumstances. *Tucker*, ¶ 24.

Mere presence of a certain person in a certain place does not amount to sufficient probable cause. *Barnaby*, ¶ 36.

When an informant does not meet these exceptions, and especially when the informant is providing hearsay information and not a personal observation, courts look to the sworn statements in a search warrant application for independent corroboration of the informant's tip to find the required substantial basis for probable cause. *Tucker*, ¶¶ 19, 21. Corroboration can include, but is not limited to, independent action taken by officers to verify the informant's tip. *Reesman*, ¶ 42; *Barnaby*, ¶ 45. Examples include utilizing investigative subpoenas, a residence drive-by, criminal background checks, personal observations, additional tips from concerned citizens, and the like. *See Reesman*, ¶ 45; *Barnaby*, ¶ 45. Without sufficient corroboration, a confidential informant's hearsay tip does not establish probable cause to justify a search warrant. *Reesman*, ¶¶ 46-48.

Recognizing the great deference that must be paid to judicial officers and providing every reasonable inference to support a probable cause determination, *Tucker*, ¶ 17, this search warrant application presents the uncommon result of lacking a substantial basis to support

probable cause. The basis of a tip that a phone number belongs to Mr. Wilnau and that this phone was being used to facilitate drug transportation was based on the words of a confidential and criminally-compromised informant. The SOI interviewed by Agent Bennett was already on probation and was facing potentially new criminal charges, having just been caught with mushrooms and 80-90 grams of meth.

The fact that the SOI could provide accurate information about other drug users and distributors in Billings is far different than being a regular informant who has provided reliable information about criminal activity to officers in other investigations. While the informant made an admission to using and distributing methamphetamine, they did not admit to being a part of a drug distribution operation in concert with Hill or others, only that they knew information about it. The informant had only heard about Hill's purchasing and selling plans and did not claim to be involved. Finally, the SOI was not a concerned citizen informant. The SOI was in trouble, and had motivation to put others in trouble to help alleviate the potential charges or sanctions they faced. The tip provided by this SOI needed sufficient, independent corroboration.

Claiming that $35,000 had been put on a mail truck and that 50 pounds of illegal drugs would be showing up in Cody, Wyoming is an extraordinary statement. Agent Bennett was able to verify some information about Christina Hill. The phone number provided by the SOI matched Hill's publicly posted number on Facebook. Christina and the SOI had text exchanges about drug activity. Bennett drove to the residence described by the SOI and saw a parked red Dodge Durango with Hill standing in front of the plates.

What Agent Bennett did not do, however, was corroborate the claim that the "Nate" in the SOI's phone was a lieutenant in Hill's organization or that he was the person who would be retrieving large quantities of drugs. The search warrant application does not describe any text communication between the SOI and Nate, or between the SOI and Hill that references Nate. The application does not describe the presence of an additional car or any indication that someone else lived at Hill's residence. The application does not connect or explain how the "Nate" in the SOI's phone is the individual Nathan Wilnau.

The only connection provided by Agent Bennett is that at an unlisted date in the past, Hill and Mr. Wilnau "had been involved in a

traffic stop together in Yellowstone County" where methamphetamine was seized. (USAO 265.) Mr. Wilnau had a criminal history involving drugs, but Bennett could not identify an offense more recent than over two decades old. From this alone, Agent Bennett inferred that "Nate" was Nathan Wilnau, that Mr. Wilnau was Hill's lieutenant, and that therefore probable cause existed to surreptitiously GPS-track this phone number for days on end.

Under a totality of the circumstances, Nathan Wilnau's association with another person—in this case Hill—at a traffic stop in the past does not sufficiently corroborate a confidential informant's motivated accusation that a person named "Nate" on the informant's phone is a lieutenant in a drug distribution organization and thus that phone should be tapped for real-time GPS data pings. Mere association or presence with others who have a criminal history or even an association with dangerous drugs is not independent corroboration that a phone number is part of a multi-state drug trafficking operation. Any Nate, Nathan, Thane, Nathaniel, Neil, or the like risks having their privacy infringed by association alone, or just ending up as a contact in the wrong phone at the wrong time. Probable cause is not present here.

## Conclusion

Mr. Wilnau respectfully requests this Court to suppress all evidence gathered following the unlawful issuance of the June 16, 2023 search warrant. Following suppression on this issue, a government dismissal of the indictment against Mr. Wilnau would be appropriate. *See U.S. v. Johnson*, 463 F.2d 70, 73 (10th Cir. 1972).

RESPECTFULLY SUBMITTED this 22nd day of September, 2025.

/s/ James Reavis
James Reavis
Netzer, Krautter & Brown, P.C.
Attorney for Defendant

## Certificate of Compliance

I certify under L.R. 1.5 and 7.1(d) that this motion is typed in Century Schoolbook 14-point font, consecutively numbered at the bottom of the page and has a word count of 3,501, excluding the caption, the certificate of service, and this certificate of compliance, as counted by Microsoft Word software.

DATED this 22nd day of September, 2025.

/s/ James Reavis
James Reavis

## CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that on September 22, 2025, I electronically filed a true and correct copy of the **MOTION TO SUPPRESS** with the Clerk of the Court for the United States District Court, for the District of Montana, Billings Division using the CM/ECF System.

I certify that service will be accomplished to the following persons and parties on the CM/ECF service list:

<u>1 - 5</u>  CM/ECF
_____  U.S. Mail
_____  E-Mail

1.  United States District Court Clerk

2.  Julia Patten
Assistant United States Attorney
United States Attorney's Office
2601 2nd Avenue North, Ste 3200
Billings, MT 59101
     *Counsel for the United States*

3.  Juli M. Pierce
Juli Pierce Law, PLLC
P.O. Box 3221
Billings, MT 59103
     *Counsel for Christina Hill*

4.  Matthew Claus
Matt Claus Law, PLLC
301 N. 27th St., Ste. 1
Billings, MT 59101
     *Counsel for Davious Greenwood-James*

20

5.    Marvin S. McCann
      McCann Law Firm
      P.O. Box 50562
      Billings, MT 59105
              *Counsel for Bonnie Chu*

                                        By: /s/ James Reavis
                                        James Reavis
                              NETZER, KRAUTTER & BROWN, P.C.
                                        *Attorney for Defendant*