**JULIE R. PATTEN**
Assistant U.S. Attorney
U.S. Attorney's Office
James F. Battin U.S. Courthouse
2601 Second Ave. North, Suite 3200
Billings, MT 59101
Phone:     (406) 657-6101
FAX:       (406) 657 6989
E-mail:    Julia.Patten@usdoj.gov
ATTORNEY FOR PLAINTIFF
UNITED STATES OF AMERICA

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>NATHAN WILNAU,<br><br>Defendants. | CR 25-62-BLG-SPW<br><br>**UNITED STATES' RESPONSE TO DEFENDANT WILNAU'S MOTION TO SUPPRESS** |

    Nathan Wilnau was caught with ten pounds of methamphetamine following a traffic stop on June 22, 2023, after agents tracked Wilnau as he traveled from Billings to Cody, Wyoming, and back pursuant to a cell-site location information search warrant issued by a Montana state district court. The warrant contained enough details for the issuing judge to determine there was probable cause. A reliable informant provided detailed information about Wilnau and his co-

1

defendant, Christina Hill, that Agent Bennett was able to independently corroborate that gave credence to the informant's other statements. Particularly in light of the deferential standard applied to warrants issued by a neutral magistrate, the affidavit contained ample probable cause. Wilnau's motion to suppress should be denied.

## FACTUAL SUMMARY

### I. Investigation begins with corroborated information from a source of information.

On June 15, 2023, Montana Division of Criminal Investigation (DCI) Agent Michael Bennett met with a source of information (SOI). Exhibit 2 (Search Warrant Affidavit). The SOI, a state probationer, made statements against self-interest to Agent Bennett by admitting to the use and distribution of methamphetamine. *Id.* The SOI told Agent Bennett that Christina Hill and "Nate" were distributing methamphetamine in the Billings area. *Id.* Agent Bennett identified "Nate" as Nathan Wilnau. *Id.* The SOI described Hill as the boss and Wilnau as her "lieutenant." *Id.* at 2. The SOI relayed that $35,000 was sent to San Francisco, where Hill is originally from, that morning on June 15, 2023, via UPS. *Id.* The SOI relayed that once the money was received, a package containing approximately 50 pounds of methamphetamine would be sent to Cody, Wyoming, where Wilnau would pick it up and bring it back to Billings. *Id.* The SOI stated Wilnau would be driving a red Dodge Durango to Wyoming. *Id.*

2

The SOI also described Hill's and Wilnau's residence. *Id.* The SOI also allowed Agent Bennett to review text messages on the SOI's phone. *Id*. In those messages, Hill instructed the SOI to have the "fungus" (psilocybin mushrooms) ready. *Id.* The SOI also provided phone numbers for both Hill and Wilnau. *Id.* Agent Bennett confirmed the number the SOI provided for Wilnau was listed under "Nate" in her contacts. *Id.*

Susbequent to speaking to the SOI, Agent Bennett corroborated much of the information relayed, including:

Montana Probation and Parole had searched the SOI's residence that same day (June 15) and psilocybin mushrooms (as discussed in the SOI's text messages with Hill) were seized. Exhibit 2. Agent Bennett confirmed the number provided by the SOI for Hill as it matched the information on her public Facebook profile. *Id.* Agent Bennett also observed Hill at the Billings residence identified by the SOI. *Id.* Agent Bennett observed Hill at the residence standing beside a red Dodge Durango with Wyoming registration. *Id.* The vehicle matched the description the SOI provided as the vehicle Wilnau would be driving to Wyoming to pickup the methamphetamine. *Id.*

Agent Bennett also reviewed a police report regarding a traffic stop from June 2022 involving Hill and Wilnau when they were both in possession of methamphetamine. *Id.* Agent Bennett reviewed criminal history records for both

Hill and Wilnau and both had prior drug history including convictions. *Id.*

## II. Agent Bennett obtains a search warrant for Wilnau's cell site location information.

On June 16, 2023, Agent Bennett applied for a warrant to determine Wilnau's cell phone location. *See* Exhibit 2 (Search Warrant Affidavit). In his affidavit of probable cause, he included the detailed information relayed above. Montana District Court Judge Davies determined there was sufficient probable cause and granted the warrant for the cell site location information for Wilnau's cell phone. *Id.* at 9. Agent Bennett served Verizon Wireless with the warrant and immediately began to receive periodic emails from Verizon with location information.

## III. Wilnau's cell phone is located in Wyoming.

Agent Bennett learned from the cell site location information that Wilnau left Billings at 5:00 a.m. on June 20 and arrived in Cody, Wyoming at 6:30 a.m. Exhibit 1 at 3. Agent Bennett went to Wilnau's known residence and noted the red Dodge Durango was not at the residence. *Id.* Agent Bennett contacted Wyoming agents who located Wilnau's vehicle at the residence of Robert Feketi in Cody, Wyoming. Agents confirmed the red Dodge Durango was registered to Feketi. *Id.* Wyoming agents advised Agent Bennett that Feketi has a drug history and is known to law enforcement. *Id.*

Over the next few days, Wyoming agents continued surveillance of the

Feketi residence. Exhibit 1 at 4. Agents observed three males loading garbage bags into the red Dodge Durango. *Id.* During this time frame, a UPS package was delivered to the Feketi residence. *Id.* It had been shipped from San Francisco, California, the day prior and weighed 15 pounds. *Id.*

### IV. Wilnau's vehicle is stopped.

Agent Bennett continued to monitor Wilnau's cell site location. On June 22, 2023, Wilnau's cell phone location showed him traveling north towards Billings, Montana even though the red Dodge Durango remained in Cody, Wyoming. Exhibit 1 at 5. However, agents observed a Chevrolet Malibu with Wyoming license plates traveling through Carbon County that corresponded to the electronic location of Wilnau's cell phone. *Id.* MHP Trooper Erick Fetterhoff conducted a traffic stop of the vehicle for speeding. Exhibit 3 (MHP report).

The driver of the vehicle was identified as Danielle Isabell who admitted she had a suspended driver's license. Exhibit 2. Wilnau, the only passenger in the vehicle, identified himself to Trooper Fetterhoff. *Id.* Trooper Fetterhoff separated the two and inquired to Isabell about the passenger. *Id.* She relayed that she did not know him and was just giving him a ride. *Id.* She later told the trooper that Wilnau put 2-3 bags inside her vehicle, and she was asked to drive him to Billings. *Id.* She denied knowing if drugs were in the vehicle. *Id.*

Wilnau was removed from the vehicle and detained. Exhibit 3. Ultimately,

Wilnau admitted to having "enough [methamphetamine in the vehicle] to be in trouble and guaranteed jail." He then told Trooper Fetterhoff there was about "5 or so pounds" of methamphetamine in the vehicle.

The vehicle was seized and searched pursuant to a search warrant. Exhibit 1 at 5. Agents located approximately 10 pounds of methamphetamine inside the vehicle. *Id.*

## ARGUMENT

The Fourth Amendment guarantees the right to be free from "unreasonable searches and seizures." U.S. Const. amend IV. The execution of a search warrant issued upon a finding of probable cause is an exception to this right. A search warrant application affidavit demonstrates probable cause when, "under the totality of the circumstances, it reveals a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Celestine*, 324 F.3d 1095, 1102 (9th Cir. 2003). Only a fair probability that evidence of a crime will be found is needed, not certainty. *Illinois v. Gates*, 462 U.S. 213, 235; 238 (1983).

If a search and seizure complied with federal constitutional standards, the evidence is admissible in Federal Court. *United States v. Chavez-Vernaza*, 844 F.2d 1368 (9th Cir. 1987); *Elkins v. United States*, 364 U.S. 206 (1960); *United States v. Miranda-Guerena*, 445 F.3d 1233 (9th Cir. 2006). Moreover, when a search has been conducted pursuant to a warrant, the defendant bears the burden of

6

showing the search was unlawful. *United States v. Brock*, 667 F.2d 1311, 1317-18 (9th Cir. 1982).

I. **The warrant complied with the Stored Communications Act's procedural requirements.**

The Federal Stored Communications Act expressly gives state court judges the jurisdictional authority to issue search warrants for electronic communications. The Act provides that a governmental entity may require the provider of an electronic communication service or remote computing service to disclose the contents of an electronic communication "pursuant to a warrant issued either "using procedures described in the Federal rules of Criminal Procedure" or "in the case of a state court, using State warrant procedures" by "a court of competent jurisdiction." 18 U.S.C. §§ 2703(a), (b)(1)(A).

Section 2703(a) of the SCA only addresses the "specific method" or "particular way" to issue a warrant. *United States v. Westfall*, 142 F. 4th 1208, 1213 (9th Cir. 2025). The *procedures* that a district court must follow in issuing a search warrant authorized under the SCA are found, among other places, in § 46-5-221, MCA. *Westfall*, 142 F. 4th at 1215 (citing *State v. Levine*, 553 P.3d 416, 419 (Mont. 2024)). Those procedures provide that a warrant application be submitted by a peace officer, the city or county attorney, or the attorney general, and it may be made in person, electronically, or by telephone. Mont. Code Ann. § 46-5-220(1) and § 46-5-222. A search warrant application is made under oath or affirmation

and must state facts sufficient to support probable cause that an offense has been committed, that evidence may be found in a particular place, and particularly describes who or what is to be seized. Mont. Code Ann. § 46-5-221. The SCA does not require state substantive law be applied.

Wilnau does not and cannot dispute the *procedures* were followed according to Montana law. Instead, he makes a novel, unsupported argument that because the state search warrant for Wilnau's cell site location falls under the SCA, the legality of the search is analyzed under substantive Montana state law rather than the Fourth Amendment. His contention is essentially that Montana's constitutional right to privacy supplants or increases the requirements for a finding of probable cause, and in this case, there was insufficient probable cause to support the issuance of the search warrant. But, he cites nothing to support this proposition.

Whether probable cause existed to issue the warrant is properly analyzed under federal law. Wilnau's assertion that state law must be used in the analysis of probable cause is not only wrong, but it also relies on the assumption that the *Montana* state court judge ignored the *Montana* constitution in her analysis and issuance of a *Montana* state search warrant. This assumption also ignores the deference this Court must give the state court's finding of probable cause, which would include the Court's unstated legal analysis. *See United States v. Leon*, 468 U.S. 897, 914 (1984) (citing *Spinelli v. United States*, 393 U.S. at 419)

("Reasonable minds frequently may differ on the question whether a particular affidavit establishes probable cause, and we have thus concluded that the preference for warrants is most appropriately effectuated by according 'great deference' to a magistrate's determination."). Notwithstanding this deference, the simple fact remains that a Fourth Amendment analysis under federal law applies. As analyzed below, the warrant was supported by probable cause and was validly issued under federal law.

## II.  Adequate probable cause existed for the search of Wilnau's cell site location information.

A commonsense reading of totality of the information contained in the search warrant application for Wilnau's cell-site location information established sufficient probable cause to issue the warrant. The source of information had proven reliable in the past and independent investigation uncovered information corroborative of Wilnau and Hill's drug trafficking. Wilnau's argument that there was insufficient corroboration that "Nate" was a lieutenant in Hill's drug trafficking organization is irrelevant in light of the totality of the circumstances as the law does not requires specific corroboration of every scintilla of a fact relayed by a source of information. Specific corroboration that "Nate" was a lieutenant in Hill's drug trafficking organization was not necessary when viewing the application in a commonsense, non-technical manner. Moreover, even if the

9

issuing court had misjudged the probable cause analysis, officers acted in good faith reliance on its judgment.

The issuance of a search warrant should be upheld if the issuing judge "had a 'substantial basis' for concluding [that] probable cause existed based on the totality of circumstances." *Ewing v. City of Stockton*, 588 F.3d 1218, 1223 (9th Cir. 2009) (quoting *Greenstreet v. Cnty. Of San Bernardino*, 41 F.3d 1306, 1309 (9th Cir. 1994)). Thus, the issuing judge's "determination that an affidavit provided probable cause to issue a search warrant will be upheld unless clearly erroneous." *Id.* (citing *United States v. Alvarez*, 358 F.3d 1194, 1203 (9th Cir. 2004)).

A court reviews the issuance of a search warrant deferentially and upholds the issuance if, under the totality of the circumstances set forth in the affidavit, "there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238-239 (1983). The court must keep in mind that the probable-cause standard is a "practical, nontechnical conception." *Id*. at 231. Finely tuned standards such as proof beyond a reasonable doubt or by a preponderance of the evidence have no place in a magistrate's decision. *Gates*, 462 U.S. at 234. Probable cause is only the probability of criminal activity and not a prima-facie showing. *Id*. at 234.

The core question in assessing probable cause based upon information supplied by an informant is whether the information is reliable. Information may

be sufficiently reliable to support a probable cause finding if the person providing the information has a track record of supplying reliable information, or if it is corroborated by independent evidence. *United States v. Williams*, 10 F.3d 590, 593 (8th Cir. 1993). If information from an informant is shown to be reliable because of independent corroboration, then it is a permissible inference that the informant is reliable and that other information the informant provides, though uncorroborated, is also reliable. *Williams*, 10 F.3d at 593; see also *United States v. Waldeck*, 644 F.Supp.3d 1169, 1179 (D. Mont. 2023) (noting that "whether the informant has a track record for providing good information" weighs in favor of reliability).

    Agent Bennett was able to corroborate information provided by the source to deem the information credible. Specifically, the source knew that Hill sent cash to San Francisco, California, where she is from, and in return, would receive meth to an address in Cody, Wyoming, and that Wilnau would pick up the drugs in a red Dodge Durango. Agent Bennett was able to corroborate that Hill was from the San Francisco area. He observed a red Dodge Durango, with Wyoming license plates, at the residence Hill and Wilnau shared. Agent Bennett also corroborated that Hill and Wilnau were associated by reviewing a prior police report in which the two were in a car together and officers found methamphetamine inside the vehicle. Healso reviewed criminal histories for both and confirmed they each had a drug

history. Wilnau's criminal history was particularly relevant considering the source told Agent Bennett that Wilnau was "not going back to prison." This corroboration certainly lends credence to the source's information such that it was a permissible inference that the informant is reliable and that other information the informant provides, though uncorroborated, is also reliable.

This permissible inference under *Williams* negates Wilnau's argument that the affidavit did not connect or explain that the "Nate" in the source's phone was, in fact, Wilnau, that the prior traffic stop was insufficient to connect Wilnau to Hill, or that "Nate" was a lieutenant in Hill's drug trafficking organization. The law does not requires specific corroboration of every scintilla of a fact relayed by a source of information. It also does not require the court abandon common sense. *See Gates*, 462 U.S. at 695 (probable cause is a "commonsense, nontechnical" conception that deals with "the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act"). In totality, there was sufficient corroboration and information provided to conclude "Nate" was Nathan Wilnau.

### III. In arguendo, even if there was insufficient probable cause, the the agents relied on the warrant in good faith.

Even if this Court determines that there was insufficient probable cause contained in the application for the search warrant, the good-faith exception applies and the evidence should not be suppressed. Agent Bennet had a good-faith

belief that his affidavit contained sufficient information to support a finding of probable cause. Again, he knew: Hill and Wilnau, together, had previously been arrested in possession of methamphetamine; a fellow drug dealer provided information that the two were involved in selling methamphetamine; Hill was originally from the San Francisco area and had a drug history from there; Wilnau was to drive a red Dodge Durango to pick up the meth in Wyoming, and he observed a red Dodge Durango with Wyoming plates at Hill and Wilnau's residence; and, he was provided a phone number for Wilnau from a reliable, credible source.

Agent Bennet had a good-faith belief that his affidavit contained sufficient information to support a finding of probable cause. Again, he knew: Hill and Wilnau, together, had previously been arrested in possession of methamphetamine; a fellow drug dealer provided information that the two were involved in selling methamphetamine; Hill was originally from the San Francisco area and had a drug history from there; Wilnau was to drive a red Dodge Durango to pick up the meth in Wyoming, and a red Dodge Durango with Wyoming plates at Hill and Wilnau's residence; and, he was provided a phone number for Wilnau from a reliable, credible source.

Not only did Agent Bennett have such a good faith belief that probable cause existed for issuance of the warrant, he also executed the issued warrant based upon

13

a good-faith reliance of the validity of the warrant. The judge was not misled by the information in the affidavit, she did not wholly abandon her judicial role, and the affidavit was not "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *See United States v. Schesso*, 730 F.3d 1040, 1050 (9th Cir. 2013) (quoting *United States v. Leon*, 468 U.S. 897, 923 (1984)). Therefore, assuming even in arguendo that the warrant lacked probable cause, Agent Bennett lawfully relied on the validity of the issued warrant and the evidence obtained therefrom should not be suppressed.

    **IV.    The search warrant for the Chevrolet Malibu is notfruit of the poisonous tree and was based upon independent probable cause.**

"When an affidavit in support of a search warrant contains information which is in part unlawfully obtained, the validity of a warrant and search depends on whether the untainted information, considered by itself, establishes probable cause for the warrant to issue." *Alexander v. United States*, 761 F.2d 1294, 1300 (9th Cir. 1985). Even assuming arguendo the information obtained from the cell records was constitutionally infirm, the warrant of the Malibu is supported by sufficient and independent probable cause that is attenuated from the original warrant.

There was enough information for the search of the Chevrolet Malibu without the challenged cell phone data. The search warrant was the product of an investigation supported by the source of information reports about Hill and Wilnau

trafficking drugs. The source indicated Wilnau would travel to Cody, Wyoming, to pick up a package of meth. Although cell data assisted in initially identifying the location of the Cody residence and the location of the vehicle in which Wilnau was traveling, the MHP trooper developed independent probable cause to search the vehicle based on the traffic stop.

      Moreover, the traffic stop constituted an intervening circumstance that attenuated the traffic stop and subsequent search from any alleged taint from the cell site search warrant. *See Brown v. Illinois,* 422 U.S. 590, 603-604 (1975; *see also United States v. Ramirez-Sandoval*, 872 F.2d 1392, 1396 (9th Cir 1989); *Utah v. Strieff*, 579 U.S. 232, 238, 136 S.Ct. 2056, 195 L.Ed.2d 400 (2016). MHP Trooper Fetterhoff stopped the Malibu for speeding. Upon contact with the driver, Isabell, and Wilnau as the passenger, he developed sufficient probable cause absent the cell site information to support a search of the automobile, with or without a warrant. It was suspicious Isabell did not know the name of her passenger. It was suspicious that this unknown-to-her stranger then put two or three bags in her car and for her to be tasked with driving him to Billings. But what really gave Trooper Fetterhoff probable cause of drug trafficking came from Wilnau's admission that he had 5 pounds of meth in the car. Trooper Fetterhoff had sufficient information to run his K9 partner around the vehicle. The K9 provided an alert and indication. There was independent probable cause for the subsequent search warrant for the

vehicle.

## CONCLUSION

The search warrant at issue did not violate the Fourth Amendment. It was supported by sufficient probable cause. Law enforcement reasonably relied upon that warrant in tracking Wilnau's cell site location. All evidence obtained from that warrant is admissible and should not be suppressed.

The United States firmly believes that a hearing in this case is unnecessary because, particularly in light of the deference due to the issuing magistrate, the four corners of the warrant application show ample probable cause to support the search, as well as clearly demonstrating that the warrant could be relied upon in good faith. The United States respectfully requests the Court deny the defendant's motion without hearing.

DATED this 3rd day of October, 2025.

        KURT G. ALME
        United States Attorney

        */s/ Julie R. Patten*
        JULIE R. PATTEN
        Assistant U.S. Attorney

## CERTIFICATE OF COMPLIANCE

Pursuant to L.R. CR 12, I hereby certify that the foregoing document is proportionately spaced, has a typeface of 14 points or more, and the body of the brief contains 3,489 words.

DATED this 3rd day of October, 2025.

                                         */s/ Julie R. Patten*
                                         JULIE R. PATTEN
                                         Assistant U.S. Attorney